Please be seated. Good morning, Council. The first case we have on the docket this morning is McCormick v. Starian Financial. Mr. Brachy appears by video and we have Mr. Lervick here on behalf of the appellee. Before we begin your argument, Mr. Brachy, can you see the lights for the timing from where you're a verbal warning when you get to a certain point in your argument? Your honor, I can see both the lights and the clock. Okay, very good. Very good. So whenever you're ready, then Mr Brachy, please proceed. May it please the court, Council. My name is John Brachy and I represent the debtors and appellants Steve and Karen McCormick in this proceeding. At McCormick's claim for attorneys' fees and costs under 11 U.S.C. section 506B, bankruptcy court initially denied that claim in total. Starian appealed. This court reversed the bankruptcy court and the matter was ultimately remanded for trial. The bankruptcy court on retrial allowed Starian's claim for fees and costs in part and debtors brought this appeal. First and foremost, your honors, the McCormicks believe that the bankruptcy court's ruling should be reversed in that any award of fees and costs to Starian is barred by the provisions of 11 U.S.C. section 506B. In part, that section of the bankruptcy code states that an over-secured claim must arise from an agreement or statute that provides for the right of the over-secured creditor to recover fees and costs. Starian's loan documents do allow Starian to claim for attorneys' fees and costs. However, the facts are undisputed that based on the value of the collateral encumbered by those loan documents, Starian was not over-secured. In fact, it was a materially under-secured creditor. Where is that in the record? That has been stipulated to by all parties, your honor. Actually, isn't it the other way around? Didn't everybody agree that Starian was an over-secured creditor? That is the point, though, and the point is how Starian accomplished being over-secured. If you look at Starian's loan documents, those encumbered certain of the debtor's property or the property of a related entity, but the value of that property, and Starian has acknowledged that, was less than the debt owed to Starian. So based solely on the consensual agreements entered into between Starian and the debtors and their related company, Starian was an under-secured creditor. But absent any evidence to show that, if the parties agreed that Starian was over-secured for the purposes of plan treatment, I mean, how can we go there now if there was never any evidence presented to the court with regard to the amount of the actual secured claim? Starian admitted on the record at the first hearing on this matter, and I'm sorry I do not have the transcript of that first hearing with me today, that based on its consensual security documents, it was an under-secured creditor. Everybody agreed that the only manner in which Starian became over-secured is that it reduced its claim against the debtors to judgment. When it filed that judgment by statute in North Dakota, that judgment created a lien on other property owned by the debtors, other property that was not subject to Starian's mortgage, and it was only the value of that property that rendered Starian over-secured. Mr. Bracke, though, isn't that, hasn't that issue already been addressed by the bank, by us, and we reversed the finding of the bankruptcy court and determined that the agreements and the judgment lien both resulted in Starian being over-secured, so that issue really isn't before us in this appeal. I respectfully disagree. That was not a final ruling, simply because this case was remanded, and as a consequence, the law of the case doctrine has no application, and indeed, given what the Eighth Circuit did in refusing to allow the McCormicks to appeal from this court's initial ruling on that question, essentially opens the way for us to conclude that even this court's first ruling was made without jurisdiction because it was not made pursuant to a this question anew and on a de novo basis. All right, Mr. Bracke, so let's visit that question a little bit then. I know what you're saying. You're saying that the creditor became over-secured when it got these consensual judgment liens, by the way, they're confessions of judgment, and that your argument seems to be that somehow all the rest of those documents merged into those judgments, but they didn't. Those judgments were in addition to all those loan documents, were they not? I don't think so, because the doctrine of merger and bar says that when a creditor proceeds to judgment, that judgment merges into itself all of the claims and all of the underlying documents. When a creditor proceeds to foreclose a mortgage, the mortgage and the note merge into the judgment of mortgage foreclosure issued by the court. But that's not what happened here. They didn't foreclose on the mortgage. In fact, they still have the mortgage, right? That's mortgage not in the debtor's property. It's in the property of a related entity. That's correct. But they took a judgment against the debtors. So they proceeded to exercise their legal remedies against the debtors, and they took a judgment, and therein lies the problem. You're right, Your Honor, that the judgment was taken pursuant to a confession, but the lien of the judgment was not consensual. The debtors never stipulated that by taking the judgment, Starian would acquire a lien in this property. The lien of the judgment was solely a result of statute, and every court that has addressed this matter has concluded, and this is unanimous, that a statutory judgment lien does not qualify under 11 U.S.C. Section 506B to give a creditor oversecured status and the right to request attorney's fees and costs. Mr. Bracke, isn't that when a particular note and mortgage have been foreclosed and resulted in that judgment, as opposed to here, there's a number of other notes still outstanding, a number of other mortgages still outstanding. Aren't these judgments for something else? Namely, I presume some responsibility on guarantee obligations? That is correct, but again... So how in the world did all those other documents that don't have anything real relationship with the judgment somehow merge into that judgment? Because those documents do not involve the claims against the debtors. Again, when Starian chose to go to judgment, it chose to wrap all of its claims against the debtors into that judgment. The fact that it may have documents involving other parties giving a right to attorney's fees and costs is, I believe, immaterial under the plain language of 506B. Additionally, the problem is, again, Starian's oversecured status arises only by virtue of a statutory judgment lien. And so let's take a look at either the that the instrument or the statute creating the right to oversecured status must have a provision that allows fees and costs. If we take a look at the judgment that Starian obtained against the debtors, that judgment did not include any award of attorney's fees and costs. The reason for that being, that would be prohibited under North Dakota state law. And furthermore, the judgment had no provision that allowed Starian to take its attorney's fees and costs in the future. The additional problem is that the statute that gives that judgment lien rights in the debtors' other real property makes no provision for including as part of the lien any attorney's fees and costs incurred by the judgment lien creditor. So again, yes, we're going to move on from that issue. Yeah, the only other question I have is, why in the addendum to the plan that was agreed to at confirmation, did the debtor agree to pay attorney's fees? I know, I know they were allowable attorney's fees, but why didn't the debtor raise this argument at that point rather than putting a provision in the plan that attorney's fees, to the extent allowable, would be paid? That was simply a provision so that it didn't have to be dealt with in each and every creditor's claim. It said that under 506, if you assert an allowable claim for attorney's fees, you must file it in a particular time. And that's the second major problem with Starian's claim for any attorney's fees and costs. This was an addendum that was specifically related to Starian concerning its fees. And it was an addendum. Right, and it tracked. Mr. Bracke, it was an addendum that resulted from a number of objections to the Chapter 11 plan, one of which was you failed to pay our attorney, you failed to provide an attorney fee provision. So you gave them an attorney fee provision in the addendum. Well, but the addendum tracked the plan, and the addendum speaks in terms of what's allowable. And whether it's allowable is a determination of, number one, do you file it timely? And number two, do you meet the requirements of 506B? Mr. Bracke, Mr. Bracke, I'm going to interrupt. Mr. Bracke, I'm going to interrupt you because I think your time is getting away from us. And I think the real issue that's before us today is the timeliness and reasonableness. That was the issue that was remanded to the bankruptcy court for decision after the last appeal. Can you tell me how your client was prejudiced by what is termed this four-day late filing of the attorney's fees? Didn't you know they were going to be coming? We did not, Your Honor. And the point is that the materiality standard recited in the restatement of contracts applies only to an executory contract when the non-breaching party is claiming a right to suspend. If we hold that materiality... So are you saying that you didn't know they were going to submit an attorney fee application? Despite the... We wouldn't know until they submitted it, Your Honor. How could we know? So what's the prejudice with that time frame of three or four days? How was your client prejudiced by that delay? We did not claim prejudice, Your Honor. The record would not provide a basis to argue prejudice. So what is your argument exactly then? Our argument is that materiality is not a standard. If we apply materiality, then no contract breach becomes final. If there's a failure to pay, you can never accelerate because the other side will always say, well, it wasn't material. We were prepared to make this payment at a later date. You're not prejudiced because we were prepared to pay additional interest, and as a consequence, you have no remedy. Commerce would simply grind to a halt if we apply materiality to every breach of the reality standard to every argument or every claim of breach. The argument on the reasonableness is the record is clear. We have block billings that you can't determine what was done, and we have the witnesses of the bank not being able to explain what was done on any of these charges. We have the bank's experts saying, I didn't bother to analyze any of the charges. If we say that that's a basis for any award of attorney's fees, we simply turn the relatively rigorous standards for award of attorney's fees in bankruptcy cases on their head. Thank you, Your Honors. I'd like to reserve the remainder of my time for rebuttal. Thank you, Mr. Baracki. Mr. Lurvick. May it please the Court? Go ahead. Counsel, my name is Tim Lurvick, and I represent the Appley Historian Financial. I'd like to just briefly address the first issue. I would agree with Your Honors that there is no basis at this point to reverse the decision that you made back in December of 2014. I think you got it right then, and there's no reason for changing that ruling. There are no different facts that the debtors can rely on as a basis for their argument that you should change your mind. There's no new law that they can rely on as a basis for their request that you should change your mind. There are no extraordinary circumstances that would justify you changing your ruling that Starian is entitled to attorney's leave. That initial decision would not work and manifest injustice. There's a claim by the appellants that the law of the case doctrine does not apply because this is not a final judgment. However, some of the same arguments do apply, and that is the case I cited, N. Ray Raynor, also refers to 5 Amjur's Second Appellate Review, Section 566, which states that issues decided in an earlier hearing should not be reopened except by a higher court absent some significant change in circumstances so long as there was a hearing on the merits and there have been no material changes in the facts since the prior appeal. Well, we did go back. You remanded the case back to the bankruptcy court. That court has now entered its order, which is now being appealed in this one, but even if the law of the case is inapplicable, the policy of deference to earlier decisions, preventing re-litigation of settled issues, in this case, protecting settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency apply. Well, and the appellant is not precluded from appealing this issue to the Eighth Circuit at the conclusion of this. I mean, I guess that, you know, that's what I'm not understanding is that the order from the bankruptcy court that came to us the we sent it back for the reasonableness and the award of the attorney's fees, which was different than the agreement. Now it's back here, so that argument hasn't been foreclosed, but we should not address it as your point. That is my point. Yes, I mean, I think it can be raised in the Eighth Circuit. It was too early to do it last time because that was not a final judgment when it was brought before, but for your purposes, I would submit that you've made your decision. It was the correct decision, and we move on from there. So, I'm not going to stay here. Can you address the materiality issue that Mr. Brachy raised in terms of commerce grinding to a halt because the terms of an agreement aren't followed with regard to submitting timely requests for payment? Sure. I think there's cases all over the place that talk about materiality of breach, and it doesn't grind commerce to a halt. I mean, there's been numerous cases where that's been the case, you know, where parties have agreed to some time element, and there have been a reasonable basis for extending those, and that, I think, is the case here. Moreover, your question concerning the prejudice to the parties, Mr. Brachy's argument that they had expectations that things would be done on time simply don't hold true. The plan provided for submission of the request for attorney's fees at least 10 days before confirmation of the plan, but if you look at the plan documents, what happened next was the debtors either approved or rejected that, and if they rejected it and there was no agreement that was reached among them, then there was a notice and a hearing before the Bankruptcy Court. In order for his argument to hold water, all of that must have occurred prior to the effective date of the plan, which would be impossible. Having a notice and hearing and a decision rendered by the Bankruptcy Court to provide the finality that he's claiming he was deprived of or his clients were deprived of . D D D n D s D S S   G S D S S . S . S G S  S S G S S S S S . S